This is a suit by Milton J. Montifue for damages for personal injuries sustained on the morning of December 31, 1944, while he was operating a Plymouth Sedan on Magnolia Street in New Orleans in an uptown direction. As he attempted to cross the intersection of Magnolia Street and Washington Avenue the said Plymouth and a large truck, operated by James Townsend, an employee of Harvey V. Wallace who is engaged in business as "Consolidated Rooing Company," came into collision and Montifue sustained serious personal injuries. He alleges that American Mutual Liability Insurance Company is the liability insurance carrier of the said Wallace and he prays for solidary judgment against that corporation, Wallace and Townsend in the sum of $37,120.90.
The matter was tried in the Civil District Court for the Parish of Orleans, Division "B," and judgment was rendered in favor of defendants, dismissing plaintiff's suit. He has appealed.
The legal questions which are involved are not in serious dispute, the matter depending practically entirely upon questions of fact for its determination. After the District Judge had rendered judgment in favor of defendants, counsel for plaintiff requested that he give written reasons for that judgment and he did so. Our reading of the record convinces us not only that the finding of the judge was correct but that he carefully analyzed all of the testimony and on all disputed questions of fact reached the same conclusion which we have reached. His reasons are so complete and so well set forth that we have decided to adopt them as our own. They are as follows:
"This suit arises out of an intersectional collision which occurred December. 31, 1944, about 8:10 a.m., at Magnolia Street and Washington Avenue.
"The plaintiff on that day and about that time was operating a Plymouth sedan on Magnolia Street in the direction of uptown, and alleges in view of the fact the semaphore light was out of order upon nearing Washington Avenue he brought his automobile to a complete stop, and observing no traffic in the near vicinity of the intersection he proceeded across Washington Avenue at a slow rate of speed and that when the front of his automobile had nearly cleared Washington Avenue it was struck a violent blow by a truck owned by one of the defendants.
"Plaintiff contends that for traffic moving on Washington Avenue in the direction of the river and for traffic moving on Magnolia Street in an uptown direction, under traffic ordinance 13702 CCS, this intersection is considered a blind corner, and vehicles are prohibited from crossing the intersection in the directions named at a speed in excess of 15 miles an hour.
"The plaintiff further avers that the truck was being operated at the intersection at a speed far in excess of that permitted by said ordinance, and that the driver of the truck was not looking ahead nor did he have the truck under control.
"Finally the plaintiff contends that he pre-empted the intersection far in advance of the truck, and had the driver of the truck been complying with the provisions. of the traffic ordinance and had he been driving in a careful and prudent manner and on the alert, he could have avoided striking his automobile; and that as a result of the violent blow sustained his automobile was shoved off a distance of about 150 feet from Magnolia Street into Washington Avenue and in the direction of the river.
"The defendants deny all plaintiff's allegations of negligence on the part of the truck driver; and in the alternative aver that should the truck driver be found guilty of any negligence, then plaintiff was guilty of contributory negligence as follows:
"1. In driving the automobile at the time in question at an excessive and illegal rate of speed; *Page 409 
"2. In operating said automobile on the wrong portion of Magnolia Street;
"3. In failing to yield the right of way to the said Townsend (driver of the truck) who had pre-empted the intersection;
"4. In failing to bring the automobile which he was driving to a stop at the intersection of Magnolia Street and Washington Avenue;
"5. In failing to yield the right of way to the said Townsend who was approaching so closely on a through street as to constitute a hazard;
"6. In failing to yield the right of way to said Townsend who was approaching plaintiff from the right;
"7. In failing to drive in a careful and prudent manner;
"8. In failing to see the truck driven by the said Townsend which was approaching on Washington Avenue;
"9. In failing to look ahead and in failing to have said automobile under control, and in failing to do anything to avoid said accident.
"The defendants plead such contributory negligence as a bar to any recovery by plaintiff.
"This case was tried on December 4 and 5, 1945. After a visit to the scene of the accident the court on December 13, 1945, rendered a judgment in favor of the defendants, dismissing plaintiff's suit at his costs. Counsel for plaintiff has requested the court to go give written reasons for judgment.
"This Court does not have the benefit of the testimony of the witness in transcribed form, and therefore cannot quote or refer with certainty to the words used by the witnesses in giving their evidence.
"Suffice it to say that at the conclusion of the trial the Court felt that the plaintiff had failed to make out his cause of action, and if he had that his negligence contributed to the accident so as to bar his recovery from the defendants. The reason why the Court visited the scene of the accident before rendering judgment was in order to give the plaintiff the full benefit of the Court having had before it a complete picture of all facts before reaching a decision.
"Counsel for plaintiff called the truck driver under the act and after cross-examining him at length put the plaintiff on the stand as the only other eye witness to the accident. Two officers of the law were also called by plaintiff, who testified they arrived on the scene shortly after the accident. Their testimony does not in any way conflict with that given by the plaintiff and defendant as to the position of the car and truck after the accident. The only bearing the testimony of the officers may have in the case is as to whether Pascal Palmisano, produced by the defendant as an eye witness, actually saw the accident.
"The officers testified that they obtained the names of no witnesses to the accident other thon those shown on their report, namely, the plaintiff, the truck driver, and the negro seated in the cab of the truck next to the driver. There is a conflict in the testimony of the officers as to who spoke to Palmisano; Officer Patterson said he spoke to him in the presence of Officer Berrigan, whereas Officer Berrigan testified he spoke to Palmisano but not in the presence of Officer Patterson. Both officers agree that Palmisano stated he did not see the accident. But in deciding, as it has, that Palmisano did witness this accident this Court did not give any weight to the fact there was a discrepancy in the officers' testimony.
"The truck driver was tried in the Criminal Court, and Palmisano testified at the criminal trial. This Court is satisfied that Palmisano witnessed the accident and gave this Court the benefit of his testimony to the best of his recollection. Counsel for plaintiff contends that because the officers testified that Palmisano told them he did not see the accident his testimony is unworthy of belief; and calls the Court's attention to discrepancies in Palmisano's statement to the insurance adjuster, his testimony in the criminal court and that given in this case.
"One may expect discrepancies in testimony given at different times by a disinterested witness, especially when the witness explains that he had not read his statement since he gave it, had not seen the *Page 410 
transcript of his testimony in the criminal trial, nor discussed the case with anyone before taking the stand at the trial of this case.
"If this Court must disregard Palmisano's testimony because of the discrepancies, it must likewise disregard the officers' testimony because of the discrepancies therein as to who spoke to Palmisano. These discrepancies would have been given great weight by the Court had there been any doubt in its mind that all the witnesses were attempting to tell the truth.
"Palmisano explains his statement to the officers by his testimony that he told them he was too busy to be bothered with the case or too busy to go to court; (this is the Court's recollection of the testimony and is not an attempt to quote the exact words of this witness) and that he did not tell them that he did not see the accident.
[1] "There is no doubt that Palmisano was at the intersection at the time of the accident. This is borne out by the plaintiff's own testimony. That Palmisano witnessed the actual impact or saw it a split second after the collision so as to obtain a mental picture thereof, is in the opinion of this Court borne out by the physical facts and therefore his testimony must be given considerable weight.
"The plaintiff's testimony is that he was proceeding uptown on the right hand side of Magnolia Street, travelling on the rails of the street car track nearest the lakeside of Magnolia Street; that as he approached Washington Avenue the semaphore lights being out of order or not operating, and in order to let some children and an elderly pedestrian cross Magnolia Street from the lake to the river side, he brought his automobile to a full stop; that he looked in both directions and not seeing any traffic proceeded slowly across Washington Avenue, and when he neared the uptown side of Washington Avenue his car was struck beyond the front door by the truck; that a piece of iron on the truck caught in the car and turned it around; that the car became disengaged from the truck, and the truck hit the car a second time running it into the water trough, and the impact caused the left side door to open, plaintiff falling out of the car, resulting in the injuries alleged in his petition.
"The car then proceeded driverless upon the uptown sidewalk near the water trough, then running across Washington Avenue and ended up on an angle in a driveway on the downtown side of Washington Avenue, about 150 feet from Magnolia Street. The truck after the accident proceeded upon the uptown sidewalk of Washington avenue stopping against the brick wall of one of the housing projects on the corner of Washington Avenue and Magnolia Street,
"The plaintiff testified when he stopped his automobile at Magnolia Street and Washington Avenue he could see a distance back Washington Avenue toward Claiborne of about 100 feet. He estimated the speed of the truck at the time of the accident at more than 30 miles an hour.
"If those were the facts, and both the automobile and the truck enjoyed equal rights at the intersection, there is no doubt plaintiff should recover. In the opinion of this Court such are not the facts. The automobile and the truck did not enjoy equal rights as to crossing said intersection.
"The testimony of the truck driver is that he crossed over Magnolia Street about 20 or 25 miles an hour that as he crossed or was about to cross the fourth rail from Claiborne Avenue of the car tracks, or the rail nearest the river, his truck was struck by plaintiff's car, causing him to run up on the sidewalk and into the brick wall; that plaintiff was knocked out of the automobile, the car going down the uptown sidewalk and finally stopping 150 feet from Magnolia Street in a driveway on the downtown side of Washington Avenue.
"The Court does not know how the testimony of the Negro riding in the cab of the truck with the driver will read when transcribed, but the Court gave little consideration to his testimony; he was either too ignorant or too afraid when testifying, and while the Court believes he was trying to tell the truth, he was so confused that his evidence carried no weight with the court.
"The only other witness was Palmisano. He testified he saw the car coming up Magnolia Street; that he did not see it *Page 411 
stop; that he saw no children or pedestrians crossing over the downtown side of Washington Avenue and Magnolia Street at the time of the accident; that the automobile and truck were travelling about the same rate of speed; and that the collision took place near the uptown river corner of Washington and Magnolia Street, and fixed the point of contact about or near the place the truck driver claims his truck was struck. Palmisano says that just prior to the collision the driver of the automobile swerved his car to the left in an attempt to avoid the accident.
"A resort to the physical facts in this case leads this Court to the conclusion that the accident did not occur as testified to by the plaintiff, but happened as described by the truck driver whose testimony is substantiated by that of Palmisano.
"The picture of the automobile offered in evidence discloses it was damaged upon the right side of the front fender beginning at or near the headlight and extending all the way back to the end of the right rear fender. This leads this Court to the conclusion that the automobile sideswiped the truck in an attempt to avoid the collision by turning to the left in the direction of the river on Washington Avenue, and that the collision took place near or past the second car track, since the plaintiff swerved to the left while travelling on the first car track, and that the driver of the truck either by likewise swerving or due to the impact losing control of the steering wheel, plus the speed at which the truck was travelling, caused it to run upon the sidewalk and against the brick wall, and the swerving and speed of the automobile caused it to run upon the sidewalk ending up 150 feet from the intersection.
"If the plaintiff had stopped his automobile at the intersection and was crossing the intersection at a slow rate of speed, his automobile would not have run upon the uptown sidewalk, recrossed Washington Avenue and proceeded a distance of 150 feet before ending up in the driveway. It travelled that distance under its own power or momentum, and was not pushed or shoved that distance as Alleged in the petition.
"Under the provisions of ordinance 13702 CCS Washington Avenue is a through street, and the speed at which a vehicle or truck may travel on a through street is 30 miles an hour. Traffic on the through street has the right of way over traffic travelling on intersecting streets. In addition a vehicle travelling on Washington Avenue in the direction of the river has the right of way over a vehicle traveling uptown on Magnolia Street, the vehicle on Washington Avenue approaching from the right of the vehicle travelling on Magnolia Street.
"It is true that under the same ordinance a vehicle which pre-empts an intersection should be permitted to proceed, but this section cannot be construed to mean that one who has not the right of way may dash into an intersection and when his car is struck by another claim that his car pre-empted the intersection.
"If plaintiff had stopped his car at the intersection as he testified, or if he had approached the intersection with his car under such control as an ordinarily prudent driver would have done, and if he had been on the alert, he would have realized it would have been the heighth of folly to leave a place of safety and drive his car into the intersection when another vehicle driven at a speed of 20 or 25 miles an hour or in excess thereof was about to enter or was in close proximity to the intersection.
[2, 3] "The plaintiff testified he did not see the approaching truck. If he did not see it, this does not relieve him of negligence as one must look at the proper time and in such a way that the purpose of looking is accomplished. Since plaintiff was approaching a through street and did not have the right of way, and as he was approaching a blind corner where the building extended to the property line, it was his duty to exercise extraordinary care before entering the intersection. Even if plaintiff had stopped before entering the intersection, he would be negligent in not seeing the truck and appreciating the danger of proceeding across: and he would be negligent *Page 412 
notwithstanding the truck driver negligently failed to see his automobile.
"Counsel directed the Court's attention to the fact that the plaintiff testified it was a foggy morning. Not only was the foggy condition of the weather not alleged in plaintiff's petition, but the evidence does not convince the court that if a foggy condition existed it was such as to interfere with the vision of the drivers. Plaintiff testified that he stopped at the intersection and could see back Washington Avenue 100 feet and saw no car approaching. The truck driver said he could see for more than a block and saw no car approaching until he was on or near the first car track. Palmisano's testimony was to the effect the weather was not foggy. If it were a real issue in the case, evidence on that point could have been brought out by the officers or the weather bureau report.
"The testimony shows there were double street car tracks on Magnolia Street but there is no evidence they were in use at the time of the accident. This Court knows of its own knowledge and its visit to the scene disclosed that these tracks were abandoned for street car traffic and had been abandoned for a considerable length of time.
"The fact that the car tracks were not in use would relieve the truck driver of the provisions of the traffic ordinance relative to crossing street car tracks, if such provisions were applicable to vehicles travelling on a through street. The evidence shows there were traffic signals (semaphore lights) at the intersection, but they had been out of order or out of use for a considerable length of time. The fact they were not working and had not been for a long time may be due to the abandonment of the street car line on Magnolia Street, and not that the lights were out of order.
"These facts are brought out for the information of an appellate court, in the event of an appeal, since the lower court cannot know what issues may be raised upon appeal, the case not being argued before it nor briefs submitted. This also accounts for the lack of citation of authorities in support of this opinion.
[4] "This court is of the opinion there was no negligence on the part of the truck driver, yet if it could be held that the truck driver was negligent plaintiff could not recover because his gross negligence, if not the cause, at least contributed to the accident, and such contributory negligence is a bar to his recovery.
"For these reasons the Court rendered judgment dismissing plaintiff's suit at his costs."
[5] There is one additional matter which justifies discussion. During the cross-examination of the witness, Palmisano, counsel for plaintiff asked him many questions concerning statements which he had made on the trial of the criminal case against Townsend. The witness became slightly confused as to distances and when counsel was discussing these distances with him, and apparently attempting to show that in the Criminal Court he had given testimony slightly different, the judge of the Civil District Court suggested that the testimony which the witness had given in the Criminal Court be read to him, and the judge said:
"Get me the testimony and I will read it to him. Here's the questions asked you and I want you to explain your testimony in connection with what happened in the criminal court and what you said today. 'Q. Explain to the court what happened?' "
Counsel for plaintiff now complains, saying that the District Judge took the cross-examination away from him and made it impossible for him to trap the witness into contradicting himself. We think that the record shows that the Judge did not improperly take the witness away from the counsel who was examining him. The record indicates to us merely that counsel and the court were trying to get at the true facts and that the Court believed that the witness could understand the situation better by having the testimony which he had given in the Criminal Court re-read to him.
At any rate, we are well convinced that the witness was trying to tell what he thought was the truth in both instances and that the minor discrepancies resulted *Page 473